UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRY C. LEDESMA,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | SACV 16-882-AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff filed this action on May 13, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 12, 13.) On May 11, 2017, the parties filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

# I.

# **PROCEDURAL BACKGROUND**

On March 8, 2011, Ledesma filed an application for disability insurance benefits. Administrative Record ("AR") 209.[1] The claim was denied initially and on reconsideration. AR 187, 205. On September 20, 2012, an Administrative Law Judge ("ALJ") conducted a hearing at which Ledesma and a vocational expert testified. AR 114-131. Ledesma amended the onset date from August 15, 2008 to February 12, 2011. AR 209. On October 5, 2012, that ALJ issued a decision denying benefits. AR 206-219.

On December 5, 2013, the Appeals Council granted review and remanded the ALJ's decision dated October 5, 2012. AR 224-226. On remand, the ALJ was ordered to obtain additional evidence concerning Ledesma's impairments, obtain evidence from a medical expert in the field of gastroenterology, give further consideration to Ledesma's residual functional capacity and, if warranted, obtain supplemental evidence from a vocational expert. AR 225-226.

After remand, on April 14, 2015, the ALJ conducted a hearing at which Ledesma, a medical expert and a vocational expert testified. AR 132-165. On June 4, 2015, the ALJ issued a decision denying benefits. AR 18-34. On March 17, 2016, the Appeals Council denied the request for review. AR 1-6. This action followed.

# II.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the

---

[1] Previously, on February 18, 2009, Ledesma filed an application for disability insurance benefits, alleging an onset date of August 1, 2008. AR 169. The application was denied initially and on reconsideration. On December 16, 2010, an ALJ conducted a hearing at which Ledesma and a vocational expert testified. AR 85-113. On February 11, 2011, the ALJ issued a decision denying benefits. AR 166-182.

Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Ledesma met the insured requirements through December 31, 2013. AR 24. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the ALJ

---

[2] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the

3

found that, through the date last insured, Ledesma had the severe impairments of status post right biceps tendon rupture; irritable bowel syndrome with diverticulosis and recurrent diverticulitis; thoracic and lumbar spine degenerative disc disease; major depressive disorder; and anxiety disorder. AR 24.

Through December 31, 2013, the date last insured, Ledesma had the residual functional capacity ("RFC") to perform light work except that he could lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand and/or walk six hours in an eight-hour workday with normal breaks; use foot pedals with the left lower extremity frequently; perform postural activities occasionally; and perform reaching and handling frequently with the right dominant extremity. He was to have "ready access to a restroom facility, specifically in an office environment, no outside work." He was precluded from work above the shoulder level with the right dominant extremity; and from ladders, ropes, scaffolds, heights and dangerous machinery. He was limited to simple tasks with simple work related decisions, "object oriented so no working with the general public, in a habitual setting." He was precluded from stressful jobs, such as taking complaints. AR 27.

Ledesma could not perform past relevant work. AR 32. However, there were jobs that existed in significant numbers in the national economy that he could have performed such as bench assembler and routing clerk. AR 33-34.

### C. Step Five Determination

At step five of the sequential analysis, the burden shifts to the ALJ to identify jobs that existed in significant numbers in the national economy that the claimant could perform. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 416.920. In meeting this burden, the ALJ relies primarily on the DOT for information about the requirements of work in the

---

impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

national economy. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see also Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001).

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the "grids"). *Lounsburry*, 468 F.3d at 1114. "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115. The grids are inapplicable when "a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations."[3] *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and quotation marks omitted). The testimony of a vocational expert is required when nonexertional limitations significantly limit the range of work a claimant can perform. *Tackett*, 180 F.3d at 1102.

The ALJ may rely on the testimony of a vocational expert, who can assess the claimant's limitations and identify any existing jobs that the claimant can perform. *Tackett*, 180 F.3d at 1100-01. However, if the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. If the testimony conflicts, the ALJ must obtain a reasonable explanation for the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). The ALJ's failure to inquire, however, can be

---

[3] Nonexertional limitations include "postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching." *Lounsburry*, 468 F.3d at 1115.

5

harmless error when there is no actual conflict, or if the VE provided sufficient support to justify any variation from the DOT. *Id.* at 1154 n.19.

### 1. **Potential Conflicts**

Based on the vocational expert's testimony, the ALJ found that Ledesma could perform the representative jobs of bench assembler (DOT 706.684-022) and routing clerk (DOT 222.687-022). AR 33-34. Ledesma argues that there is a potential conflict between the vocational expert's testimony and the DOT in two respects: (1) his need for ready access to a restroom; and (2) his preclusion from reaching above shoulder level with the dominant arm.

"For a difference between an expert's testimony and the [DOT]'s listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected. . . . But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "[A]n ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances." *Id.*

In *Gutierrez*, the claimant was precluded from reaching above her shoulder with her right arm. The vocational expert testified that the claimant could perform work as a cashier. *Id.* at 807. The Ninth Circuit noted that the DOT refers to occupations, not specific jobs. "'Occupation' is a broad term that includes 'the collective description of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" For this reason, "not all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of 'maximum requirements' for an occupation will be apparent or obvious." *Id.* at 807-08 (citation omitted). The DOT's description of

a cashier specified that a cashier may need to "'reach frequently,'" yet also specified "such mundane functions as making change, operating a cash register, selling tickets, and scanning Universal Product Codes – none of which require overhead reaching." *Id.* at 808 (citation omitted). "[A]nyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to. . . . Had the expert opined that [the claimant] could stock shelves or wash windows, the conflict would have been apparent and obvious, and the ALJ would have needed to follow up with more specific questions. But where the frequency or necessity of a task is unlikely and unforeseeable – as it is with cashiers having to reach overhead – there's no similar obligation." *Id.* "Given how uncommon it is for most cashiers to have to reach overhead, we conclude that there was no apparent or obvious conflict between the expert's testimony and the [DOT]." *Id.*

The vocational expert opined Ledesma could perform the jobs of bench assembler and routing clerk notwithstanding his preclusion of work above shoulder level with the right dominant arm. The ALJ included this limitation in the hypothetical. AR 160-61. The expert further testified that this opinion was consistent with the DOT and was based on his knowledge and observation of the job. AR 162-63. "You're working at a work bench. Things are directly in front of you. . . . I've never really seen it where they're having to reach overhead." AR 162. An ALJ is "entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements.'" *Gutierrez*, 844 F.3d at 809 (citation omitted); *see also Cattano v. Berryhill,* 2017 U.S. App. LEXIS 5730, *4-*5 (9th Cir. Apr. 3, 2017).[4] Given that the ALJ's conclusion regarding the

---

[4] Ledesma's cites district court cases that were decided prior to the Ninth Circuit's opinion in *Gutierrez*.

bench assembler position is supported by substantial evidence, any error as to the routing clerk position would be harmless.[5]

The ALJ's hypothetical to the vocational expert also included a requirement that Ledesma have ready access to a restroom facility. The vocational expert asked for more specificity. The ALJ responded that the job should be "[i]n an office environment that they can use the bathroom." AR 160. The vocational expert clarified "[s]o, like nothing outside." The ALJ responded, "Correct." *Id.* The vocational expert responded with the two representative jobs set forth above. AR 160-61. Ledesma's argument that there is an apparent and obvious conflict is conclusory. *See Dewey v. Colvin*, 650 Fed. Appx. 512, 514 (9th Cir. 2016); *McDaniel v. Colvin*, 2017 U.S. Dist. LEXIS 59253, *10-*12 (C.D. Cal. Apr. 17, 2017) (finding no conflict when DOT is silent on issue such as restroom access); *see also Hopper v. Colvin*, 2014 U.S. Dist. LEXIS 162396, *21-*22 (D. Or. Nov. 14, 2014) (vocational expert testimony that bench assembler job could be performed by claimant requiring ready access to restroom).

### 2. **Number of Jobs**

An ALJ may rely on a vocational expert's testimony about the number of relevant jobs in the national economy. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").

Ledesma argues that the vocational expert erred in testifying that there are approximately 236,000 bench assembler jobs in the national economy. AR 163.

---

[5] A routing clerk sorts boxes or articles by reading delivery or route numbers on articles or delivery slips, and placing articles in bins according to route, driver or type. This occupation includes conveyor belt package sorter or mail sorter. (DOT 222.687-022.) To the extent this occupation would require reaching above the shoulder, Ledesma does not explain why a routing clerk could not use one upper extremity. *See Ibach v. Colvin*, 2017 U.S. Dist. LEXIS 22515, *13-*14 (C.D. Cal. Feb. 15, 2017).

The vocational expert testified that she identified job numbers for a particular DOT job, not the entire Occupational Employment Statistics ("OES") group.  AR 163.  Counsel did not question the vocational expert about the OES calculations on which Ledesma now relies, and therefore there is no foundation in the record explaining how counsel has translated the DOT job codes into the Standard Occupational Classification ("SOC") system used by OES.  *See Leija v. Colvin*, 2015 U.S. Dist. LEXIS 39575, *15-*16 (E.D. Cal. Mar. 26, 2015) (noting claimant "does not provide any evidence or information to establish the reliability or accuracy of this job-code conversion website").  This is not an appropriate subject for judicial notice.  Fed. R. Evid. 201.

Ledesma does not dispute that the vocational expert's testimony regarding the number of routing clerk jobs was supported by substantial evidence.  To the extent the ALJ erred, any such error would be harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115-21 (9th Cir. 2012) (discussing harmless error principles).

### D. Medical Evidence

Ledesma argues that the ALJ erred in excluding from the RFC assessment his need to take unscheduled breaks during the workday.

The ALJ found that Ledesma has "unexpected episodes of diarrhea and bowel urgency secondary to his irritable bowel syndrome, diverticulosis and diverticulitis."  AR 29.  The ALJ translated this limitation into an RFC assessment that required ready access to a restroom.  AR 27, 29.

The ALJ appears to have conflated different types of limitations.  Ready access to a bathroom is distinct from the question of whether a claimant needs (a) unexpected bathroom breaks or, as one ALJ put it, "freedom to go on an unpredictable schedule as needed;"[6] and/or (b) bathroom breaks that may exceed the number or duration of normal breaks during the workday.  *See Woods v. Comm'r*, 2015 U.S. Dist. LEXIS

---

[6] *O'Neil v. Comm'r*, 2017 U.S. Dist. LEXIS 49019, *9 (D. Or. Mar. 31, 2017).

167303, *9 (D. Or. Dec. 14, 2015) ("'ready access to a restroom' does not account for a limitation on the ability to work due to the need for restroom breaks");

Here, the ALJ found that Ledesma had "unexpected episodes of diarrhea and bowel urgency." AR 29. The medical expert opined that Ledesma's severe irritable bowel syndrome and diverticular disease "would cause him to go to the bathroom more often than a normal individual." AR 147-48. The examining physician, Dr. Godes, opined that Ledesma required "immediate" access to a restroom due to Ledesma's reports that he had loose bowel movements at least six times per day. AR 499, 503. Beginning in mid 2012, the medical records indicate that Ledesma reported diarrhea at least six times per day without warning. *See* AR 951 (5-6 before 6 p.m.), 998 (6 unexpected bouts per day), 1001 (7 episodes per day), 1004 (5-8 unanticipated episodes per day). Ledesma reported the risk of soiling himself if he could not reach a restroom in time. AR 998. In September 2012, Ledesma reported an acute attack for five days that left him dehydrated and lethargic, and was concerned that the attacks were becoming more frequent. AR 1006; *see also* AR 1125, 1133 (physician sent Ledesma to emergency room for dehydration due to IBS in August 2014).

Remand is therefore appropriate so that the ALJ can include in the RFC assessment his finding that Ledesma has unexpected episodes of diarrhea that would require ready access to a bathroom as needed, and so that the ALJ can consider whether the frequency or duration of bathroom breaks would exceed normal breaks. *See, e.g., Perl v. Comm'r*, 2017 U.S. Dist. LEXIS 41701, *19 (E.D. Cal. Mar. 21, 2017) (remanding for consideration of treating physician's opinion that claimant would need unscheduled restroom breaks 3 to 5 times a day for 20 minutes at a time due to chronic diarrhea). Ledesma also argues that the ALJ erred in discounting his credibility. The court need not address this issue because the credibility of Ledesma's reports concerning the frequency and unexpected nature of his bouts of diarrhea do not appear to be in dispute.

# IV.
# ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

DATED: May 30, 2017

_____
ALICIA G. ROSENBERG
United States Magistrate Judge